UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**Holding a Criminal Term**

**Grand Jury Sworn in on May 7, 2012**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.: 10-CR-256 (RMC)** |
| | : | |
| v. | : | **GRAND JURY ORIGINAL** |
| | : | |
| | : | **VIOLATIONS:** |
| **NOE MACHADO-ERAZO, (08)** | : | **18 U.S.C. § 1962(d)** |
| also known as Gallo, | : | **(RICO Conspiracy)** |
| **JOSE MARTINEZ-AMAYA, (09)** | : | **18 U.S.C. § 1959(a)(3)** |
| also known as Crimen, | : | **(Assault with a Dangerous Weapon in Aid** |
| **MOISES HUMBERTO RIVERA-LUNA,** | : | **of Racketeering)** |
| also known as Santos, (14) | : | **18 U.S.C. § 924(c)(1)(A)** |
| also known as Viejo Santos, | : | **(Possession of a Firearm During a in** |
| **TOKIRO RODAS-RAMIREZ, (16)** | : | **Relation to a Crime of Violence)** |
| also known as Perverso, | : | **18 U.S.C. § 1959(a)(1)** |
| also known as Johnny, | : | **(Murder in Aid of Racketeering)** |
| **MARVIN GEOVANNY** | : | **18 U.S.C. § 2** |
| **MONTERROSA-LARIOS, (17)** | : | **(Aiding and Abetting)** |
| also known as Enano, | : | **22 D.C. Code § 2101, § 4502 (2007 ed.)** |
| **HENRY DIAZ-ANTUNEZ, and (19)** | : | **(First Degree Murder While Armed,** |
| also known as Stewie, | : | **(Premeditated))** |
| also known as Stuvi, and | : | |
| **YESTER AYALA, (20)** | : | |
| also known as Freeway, | : | Case: 1:10-cr-256 |
| also known as Daddy Yankee, | : | Assigned To: Rosemary M. Collyer |
| | : | Assigned Date: 05/09/2103 |
| | : | Description: Superseding Indictment |
| **Defendants.** | : | Case Related To: 10-cr-256 (RMC) |

**I N D I C T M E N T**

The Grand Jury charges that:

**COUNT ONE**

<u>Introduction</u>

1.      *La Mara Salvatrucha*, also known as the MS-13 gang (hereafter "MS-13"), is a

gang composed primarily of immigrants or descendants of immigrants from El Salvador, with

members operating throughout the United States, including within the District of Columbia. The name "*Mara Salvatrucha*" is a combination of several slang terms. The word "*Mara*" is the term used in El Salvador for "gang." The phrase "*Salvatrucha*" is a combination of the words "*Salva*," which is an abbreviation for "Salvadoran," and "*trucha*," which is a slang term for the warning "fear us," "look out," or "heads up."

2.    In the United States, MS-13 originated in Los Angeles, California, where, among other things, MS-13 members engaged in turf wars for the control of drug distribution locations. MS-13 quickly spread to states across the country, including Virginia, Maryland, Tennessee, North Carolina, and the District of Columbia.

3.    MS-13 is a national and international criminal organization with over 10,000 members regularly conducting gang activities in at least twenty states and the District of Columbia, as well as in Mexico, Honduras, Guatemala, and El Salvador. MS-13 is one of the largest street gangs in the United States. Gang members actively recruit members, including juveniles, from communities with a large number of immigrants from El Salvador. Members, however, can also have ethnic heritage from other Central American countries. In the United States, MS-13 has been functioning since at least the 1980s.

4.    At all times relevant to this Indictment, in order to join MS-13, members were required to complete an initiation process, often referred to as being "jumped in" or "beat in" to the gang. During that initiation, other members of MS-13 would beat the new member, usually until a gang member finishes counting aloud to thirteen.

5. At all times relevant to this Indictment, some members of MS-13 signified their membership by wearing tattoos reading "MARA SALVATRUCHA," "MS," "MS-13," or similar slogans, often written in Gothic lettering. The gang colors of MS-13 are blue, black, and white, and members often wear clothing of these colors bearing the number "13," or with numbers that, when added together, totaled 13, such as "76." Also, MS-13 members from time to time marked their territory or signified their presence through the use of graffiti with the words "MS" or other identifying slogans. More recently, some MS-13 members have more discreetly and less publicly signified their membership by hiding and avoiding such clothing and tattoos in order to avoid detection by law enforcement. MS-13 members refer to one another by their gang names or other nicknames and may not know fellow gang members except by these gang names.

6. At all times relevant to the Indictment, members of MS-13 were expected to protect the name, reputation, and status of the gang from rival gang members and other persons. MS-13 members required that all individuals should show respect and deference to the gang and its membership. To protect the gang and to enhance its reputation, MS-13 members were expected to use any means necessary to force respect from those who show disrespect, including acts of intimidation and violence. MS-13's creed is exemplified by one of its mottos, "*Mata, roba, viola, controlla,*" which translates in sum and substance to, "Kill, steal, rape, control."

7. At all times relevant to this Indictment, members of MS-13 engaged in criminal activity, including murders, attempted murders, narcotics distribution, assaults, robberies, extortions, stealing vehicles, and obstructing justice in the form of threatening and intimidating witnesses that they believed to be cooperating with law enforcement. MS-13 members were required to commit acts of violence to maintain membership and discipline within the gang,

including violence against rival gang members or those they perceived to be rival gang members, as well as MS-13 members and associates who violated the gang's rules. As a result of MS-13's frequent use of violence, innocent persons were often injured or killed. Participation in criminal activity by an MS-13 member, particularly violent acts directed at rival gang members or as ordered by the gang leadership, increased the level of respect accorded that member, resulting in that member maintaining or increasing his position in the gang, and possibly resulting in recognition as a leader.

8.      At all times relevant to this Indictment, MS-13 was organized in the District of Columbia and elsewhere in "cliques," that is, smaller groups operating in a specific city or region. MS-13 cliques sometimes worked together cooperatively to engage in criminal activity and to assist one another in avoiding detection by law enforcement. The cliques operated under the umbrella rules of MS-13. In the District of Columbia and surrounding metropolitan jurisdictions, these cliques included Sailors (SLSW), Normandy (NLS), Peajes, Western (WLS), Uniones (ULS), and Fultons. The principal, although not the only, rivals to MS-13 in the District of Columbia and surrounding jurisdictions are 18th Street, STC and the Mara R gangs. One of the principal rules of MS-13 is that its members must attack and kill rivals whenever possible.

9.      At all times relevant to this Indictment, MS-13 members attended meetings together on a regular basis. Within the Washington, D.C. metropolitan area, specific cliques have banded together under an initiative from El Salvador called "The Program." Each program is usually designated by its geographic area. However, in the District of Columbia the collaborative cliques call themselves "La Hermandad" (meaning "The Brotherhood"). The leaders of each clique meet as representatives of La Hermandad to discuss gang rules and gang

business, to resolve problems or issues involving the cliques, and to unite gang members. Specific issues may include among other things: gang organizational issues; illegal activity conducted on behalf of MS-13; acts of violence committed by MS-13 members against rival gang members and others; law enforcement activity against MS-13 members; and purging the gang of those suspected of cooperating with law enforcement.

10.     The leaders of individual MS-13 cliques are typically called "shot callers" or "*La Palabra*." Above the "shot callers" are MS-13 leaders, often referred to as the "big homies," some of whom are incarcerated in El Salvador, who convey their orders through, among other means, the use of telephones. The leaders of MS-13 resolve disputes between gang members, address organizational issues, and participate in significant gang decisions such as whether to assault or murder gang members, associates, and other individuals suspected of cooperating with law enforcement. When such a decision is made to assault or murder gang members, associates, and other individuals suspected of cooperating with law enforcement or to otherwise discipline an MS-13 member, there is said to be a "green light" on that gang member, associate, or other individual.

11.     At all times relevant to this Indictment, MS-13 members paid dues that were collected at gang meetings. MS-13 members collected dues for the benefit of, and to be provided to, MS-13 gang members who were imprisoned in the United States, in El Salvador, and elsewhere. On more than one occasion, MS-13 members in La Hermandad transferred funds to MS-13 members incarcerated in prison in El Salvador. MS-13 members also collected dues to buy firearms to be used in the conduct of MS-13's affairs and other illegal activities.

12.     At all times relevant to this Indictment, MS-13 members communicated about gang activities with other MS-13 members in the District of Columbia and elsewhere using mobile telephones, telephone text messages, notes or "kites," and other modes of communication. Additionally, MS-13 members used transnational and international money wire transfers to conduct and promote gang activities.

The Racketeering Enterprise

13.     MS-13, including its leadership, members and associates, in the District of Columbia, Maryland,  El Salvador, and elsewhere, constituted an "enterprise" as defined in Title 18, United States Code, Section 1961(4) [hereinafter "the enterprise"] that is, a group of individuals associated in fact.   The enterprise constituted an ongoing organization whose members functioned as a continuing unit that had a common purpose of achieving the objectives of the enterprise.   This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

Purposes of the Enterprise

14.     The purposes of the MS-13 enterprise included the following:

a.     Preserving and protecting the power, territory, reputation, and profits of the enterprise through the use of intimidation, violence, threats of violence, assaults, and murder;

b.     Promoting and enhancing the enterprise and the activities of its members and associates by committing crimes, including, but not limited to, murder, attempted murder, narcotics trafficking, theft of vehicles, robberies, extortion, human smuggling, and other criminal activities;

c.    Keeping victims, potential victims, and community members in fear of the enterprise and its members and associates through violence and threats of violence;

d.    Providing financial support and information to MS-13 members, including those incarcerated in the United States and El Salvador; and

e.    Providing assistance to other MS-13 members who committed crimes for and on behalf of the gang, to hinder, obstruct, and prevent law enforcement officers from identifying the offenders, apprehending the offenders, and successfully prosecuting and punishing the offenders.

15.    The defendants, who encompass some of the membership and the leadership of MS-13, acted individually, with each other, with other members known and unknown to the Grand Jury, and also with non-member MS-13 associates in the commission of racketeering activities and other criminal conduct.

16.    Beginning on a date unknown to the Grand Jury but since at least the late 1990s, and continuing up through and including the present, in the District of Columbia, the District of Maryland, and elsewhere, **NOE MACHADO-ERAZO**, also known as Gallo; **JOSE MARTINEZ**, also known as Crimen; **MOISES HUMBERTO RIVERA-LUNA**, also known as Santos, also known as Viejo Santos; **TOKIRO RODAS-RAMIREZ**, also known as Johnny, also known as Perverso; **MARVIN GEOVANNY MONTERROSA-LARIOS**, also known as Enano; **YESTER AYALA**, also known as Freeway, also known as Daddy Yankee, together with others known and unknown, each being a person employed by and associated with MS-13, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully, knowingly, and intentionally did conspire to violate Title 18, United

States Code, Section 1962(c), that is to conduct and participate, directly and indirectly, in the conduct of the affairs of the MS-13 enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5), which pattern of racketeering activity consisted of multiple acts involving offenses chargeable under the following provisions of District of Columbia and Maryland law:

a.     Murder, in violation of District of Columbia Code, §§ 22-2101 and 2103, and in violation of Maryland Code Criminal Law §§ 2-201, 2-204, 2-205, 2-206 and the Common Law of Maryland;

b.     Robbery, in violation of District of Columbia Code, § 22-2801 and in violation of Maryland Code, Criminal Law §§ 3-402 and 3-403 and the Common Law of Maryland;

c.     Extortion, in violation of District of Columbia Code, § 22-3251, and Maryland Code, Criminal Law §§ 3-701, 3-705, and the Common Law of Maryland;

and multiple acts involving the following provisions of federal narcotics law:

d.     Sections 841(a)(1) and 846 of Title 21, United States Code;

and multiple acts indictable under the following provisions of federal law:

e.     18 U.S.C. § 1512 (Witnesses Retaliation/Tampering);

f.     18 U.S.C. § 1503 (Obstruction of Justice);

17.     It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

### Manner and Means of the Conspiracy

18.     It was part of the manner and means of the conspiracy that the defendants, as gang members of MS-13, were required to have and did have regular meetings with other MS-13 gang

members to discuss, among other things: the structure and organization of the gang; past criminal acts committed against rival gang members and others; MS-13 members who were arrested or incarcerated; the disciplining of MS-13 members; police interactions with MS-13 members; the identities of gang members and gang associates suspected of cooperating with law enforcement and the proposed actions to be taken against such members and associates; plans and agreements regarding the commission of future crimes, including murder, extortion, narcotics distribution, robbery, illegal possession of firearms, and assault, as well as ways to conceal these crimes; and the enforcement of gang rules.

19.    It was further part of the manner and means of the conspiracy that the defendants and other members and associates of MS-13 agreed to purchase, maintain, and circulate a collection of firearms for use in criminal activity by MS-13 members.

20.    It was further part of the manner and means of the conspiracy that the defendants and other members and associates of MS-13 agreed that acts of violence, including murder, attempted murder, and assault, would be committed by members and associates of MS-13 against rival gang members and others when it suited the enterprise's purposes. MS-13 members also used violence to impose discipline within the gang.

21.    It was further part of the manner and means of the conspiracy that the defendants and other members and associates of MS-13 agreed to distribute narcotics, to use the telephone to facilitate narcotics distribution, to commit robbery, extortion, and other crimes, and to conceal their criminal activities by obstructing justice, threatening or intimidating witnesses, and other means.

<u>Overt Acts</u>

22.     In furtherance of the racketeering conspiracy and to effect the objectives thereof, the defendants and their co-conspirators committed and caused to be committed the following overt acts, among others, on or about the following dates in the District of Columbia, the District of Maryland and elsewhere:

a.     On or about April 7, 2008, in the District of Columbia, **TOKIRO RODAS-RAMIREZ**, also known as Perverso, also known as Johnny, and others known to the Grand Jury shot a person they believed to be a rival gang member.

b.     Between on or about July 2008 and on or about February 2011, persons known to the Grand Jury sent money intended for an MS-13 leader in El Salvador via Western Union to Domatila de la Paz Portillo-Ramos and Julia Abarca in El Salvador.

c.     On or about July 29, 2008, **TOKIRO RODAS-RAMIREZ**, also known as Perverso, also known as Johnny, along with other MS-13 members known to the Grand Jury, and while in possession of firearms, hunted for a rival gang member in Riverdale, Maryland.

d.     On or about July 29, 2008, **TOKIRO RODAS-RAMIREZ**, also known as Perverso, also known as Johnny, and at least one other MS-13 member known to the Grand Jury, shot and killed a person in Riverdale, Maryland.

e.     On or about September 14, 2008, in Riverdale, Maryland, MS-13 gang members, known and unknown to the Grand Jury, including **TOKIRO RODAS-RAMIREZ**, also known as Perverso, also known as Johnny, held a meeting to discuss MS-13 gang business and initiate new members into the gang.

f.     On or about October 6, 2008, an MS-13 member known to the Grand Jury shot three persons in Reston, Virginia.

g.     Between on or about the summer of 2008 through November 6, 2008, from a jail in El Salvador, **MOISES HUMBERTO RIVERA-LUNA**, also known as Santos, also known as Viejo Santos, issued and conveyed through an MS-13 clique leader known to the Grand Jury a green light which ordered the murder of Louis Alberto Membreno-Zelaya, also known as El Brujo. The clique leader subsequently ordered the green light to cliques in the Washington, D.C. metropolitan area.

h.     On or about November 6, 2008, in the District of Columbia **YESTER AYALA**, also known as Freeway, also known as Daddy Yankee; **HENRY DIAZ-ANTUNEZ**, also known as Stewie, also known as Stuvi, and other MS-13 members or associates whose identity is known to the Grand Jury, stabbed and killed Louis Alberto Membreno-Zelaya, also known as "El Brujo" in accordance with the green light which had been issued by RIVERA-LUNA and the clique leader.

i.     On or about December 12, 2008, in Washington, D.C., **YESTER AYALA**, also known as Freeway, also known as Daddy Yankee, and others known and unknown to the Grand Jury, participated in the assault and stabbing of Giovanni Sanchez, who subsequently died.

j.     On or about January 20, 2009, **NOE MACHADO-ERAZO**, also known as Gallo, and others known and unknown to the Grand Jury, attended a meeting at which at least one person was initiated into the gang.

k.     Between or about March 2009 and July 2009, JOSE MARTINEZ and others participated in a beating administered as discipline by MS-13 to a gang member.

l.     Between on or about June 2009 and September 2009, **NOE MACHADO-ERAZO**, also known as Gallo, ordered a beating of an MS-13 member due to suspicion of cooperation with law enforcement.

m.     On or about October 15, 2009, in the District of Maryland, MS-13 members assaulted individuals near a nightclub.

n.     On or about October 17, 2009, in the District of Maryland, MS-13 members including JOSE MARTINEZ participated in an assault on a person they believed to be a rival gang member.

o.     On or about November 28, 2009, an MS-13 meeting was held in the District of Maryland and attended by **JOSE MARTINEZ-AMAYA**, also known as Crimen, and others.

p.     On or about December 6, 2009, a co-conspirator known to the Grand Jury spoke to an MS-13 member in another city who advised him of violent activity by MS-13 members in that city.

q.     On or about December 9, 2009, in the District of Columbia, MS-13 members known to the Grand Jury shot a person.

r.     On or about December 9, 2009, **NOE MACHADO-ERAZO**, also known as Gallo, agreed to assist in hiding another MS-13 member who had been involved in a shooting.

s.     In or about the latter part of 2009, at the direction of **MOISES HUMBERTO RIVERA-LUNA**, also known as Santos, also known as Viejo Santos; **MARVIN GEOVANNY MONTERROSA-LARIOS,** also known as Enano; and an unidentified person, each of whom was incarcerated in El Salvador and participated by telephone in a meeting which was also attended by **NOE MACHADO-ERAZO**, also known as Gallo, representing the Normandy

clique, a representative of the Uniones clique, an unidentified representative of the Western clique, and others known and unknown to the Grand Jury, and during that meeting it was agreed and directed that a coalition of cliques, known as a Program, would be formed and called La Hermandad.

t.     **MARVIN GEOVANNY MONTERROSA-LARIOS**, also known as Enano, and **MOISES HUMBERTO RIVERA-LUNA**, also known as Santos, also known as Viejo Santos, in or about the latter part of 2009 or early 2010, advised La Hermandad members that one of the purposes of La Hermandad was to investigate persons in other cliques who were suspected of talking to law enforcement, and kill them if they were found to be cooperating.

u.     On or about January 9, 2010, a person known to the Grand Jury told an unknown person that he would call **MARVIN GEOVANNY MONTERROSA-LARIOS**, also known as Enano, to help with killing a person in El Salvador.

v.     On or about January 10, 2010, a co-conspirator known to the Grand Jury asked an MS-13 member in another city for assistance in smuggling some persons, including at least one MS-13 member, into the United States.

w.     During in or about January, 2010, **MARVIN GEOVANNY MONTERROSA-LARIOS**, also known as Enano, a person known to the Grand Jury, and others unknown to the Grand Jury attempted to locate a house in El Salvador which could be used to hide from the police unknown MS-13 members who had arrest warrants.

x.     On or about January 14, 2010, **NOE MACHADO-ERAZO**, also known as Gallo, engaged in a conversation with a co-conspirator known to the Grand Jury in which they discussed other MS-13 members being arrested in possession of guns.

y.     On or about January 15, 2010, an MS-13 member known to the Grand Jury agreed to go to Houston to teach clique leaders there how to run an MS-13 clique.

z.     On or about February 4, 2010, a co-conspirator known to the Grand Jury engaged in a conversation with a clique member in another city at which time the co-conspirator advised that **NOE MACHADO-ERAZO**, also known as Gallo, and another MS-13 member known to the Grand Jury would come to that city to help organize an MS-13 clique and they would each bring a firearm.

aa.     On or about February 20, 2010, an MS-13 meeting was held in the District of Maryland at which time an **MOISES HUMBERTO RIVERA-LUNA**, also known as Santos, also known as Viejo Santos, an El Salvador leader, spoke to the membership via **NOE MACHADO-ERAZO**'s cell phone.

bb.     On or about February 20, 2010, an MS-13 meeting was held at which time it was discussed sending **NOE MACHADO-ERAZO**, also known as Gallo, and another MS-13 member known to the Grand Jury to another city to assist in organizing an MS-13 clique.

cc.     On or about March 1, 2010, **MOISES HUMBERTO RIVERA-LUNA**, also known as Santos, also known as Viejo Santos, participated in a three-way telephone conversation with a person known to the Grand Jury located in the Washington metropolitan area and an unindicted co-conspirator located in a city in another state. During that conversation RIVERA-LUNA advised that later that day he was participating in a meeting with Maryland, New York, and Los Angeles.  RIVERA-LUNA said that it was important for members of the Normandy clique in the Washington, D.C. area to go to the other city to make sure the members of the Normandy clique there were following the clique's guidelines, to show the members of the

Normandy clique in the other city how to run things, and to accompany members of the Normandy clique in the other city to search for and assault rival gang members.

dd.  On or about March 6, 2010, in Silver Spring, Maryland, an MS-13 meeting was held, which was attended by **NOE MACHADO-ERAZO**, also known as Gallo, and others, and during which **NOE MACHADO-ERAZO** and others discussed the proper method of jumping-in, or initiating, a new member

ee.  On or about March 6, 2010, a co-conspirator known to the Grand Jury led an MS-13 meeting in the District of Maryland and urged the attendees to commit crimes on behalf of the gang.

ff.  Beginning at least on or about November 2009 and continuing at least through on or about March 31, 2010, members of MS-13 known and unknown to the Grand Jury, as well as other persons, conspired to distribute cocaine.

gg.  On or about March 7, 2010, a co-conspirator known to the Grand Jury spoke on the telephone to seek the advice of **MOISES HUMBERTO RIVERA-LUNA**, also known as Santos, also known as Viejo Santos, an MS-13 leader incarcerated in El Salvador, regarding the behavior of Felipe Leonardo Enriquez, also known as Zombie, at an MS-13 clique meeting.

hh.  On or about March 7, 2010, **MOISES HUMBERTO RIVERA-LUNA**, also known as Santos, also known as Viejo Santos, an MS-13 leader in El Salvador, directed a co-conspirator known to the Grand Jury to kill a rival gang member in order to earn the respect of his clique.

ii.  On or about March 9, 2010, **MOISES HUMBERTO RIVERA-LUNA**, also known as Santos, also known as Viejo Santos and **NOE MACHADO-ERAZO**, also known as

15

Gallo, spoke over a cellular telephone to discuss the agenda of an impending meeting. RIVERA-LUNA then addressed the attendees of the meeting via speaker phone, telling them, among other topics, the purpose of La Mara meetings and that if a member has a disrespectful attitude at a clique meeting the member should be punished.

jj.    On or about March 10, 2010, an MS-13 leader in El Salvador ordered a co-conspirator known to the Grand Jury to find someone else within MS-13 to sell drugs for the gang because of the arrest of an MS-13 member who had been selling drugs.

kk.    On or about March 16, 2010, a co-conspirator known to the Grand Jury in Falls Church, Virginia, was in possession of a gun.

ll.    On or about March 19, 2010, at an MS-13 meeting in Silver Spring, Maryland, **MOISES HUMBERTO RIVERA-LUNA**, also known as Santos, also known as Viejo Santos, an MS-13 leader in El Salvador, spoke to the membership by cell phone and appointed **JOSE MARTINEZ-AMAYA**, also known as Crimen, as a leader of the Normandy clique.

mm.    On or about March 19, 2010, at an MS-13 meeting in Silver Spring, Maryland, RIVERA-LUNA ordered an MS-13 member to investigate whether a co-conspirator known to the Grand Jury was cooperating.

nn.    On or about March 19, 2010, at an MS-13 meeting in Silver Spring, Maryland, **MOISES HUMBERTO RIVERA-LUNA**, also known as Santos, also known as Viejo Santos, told the clique he had learned from an MS-13 member in Guatemala that Felipe Leonardo Enriquez, also known as Zombie, had an unauthorized tattoo, that is, he had placed an "X" over his MS-13 tattoo. RIVERA-LUNA ordered the clique to determine whether Enriquez had the unauthorized tattoo, and, if so, to kill him.

16

oo.    On or about March 31, 2010, in the District of Maryland, **NOE MACHADO-ERAZO**, also known as Gallo, and **JOSE MARTINEZ-AMAYA**, also known as Crimen, along with others known to the Grand Jury, upon the authorization of **MOISES HUMBERTO RIVERA-LUNA**, also known as Santos, also known as Viejo Santos, killed Felipe Leonardo Enriquez, also known as Zombie.

pp.    On or about May 30, 2010, persons known to the Grand Jury attended an MS-13 meeting.

qq.    On or about October 10, 2010, MS-13 members known to the Grand Jury attended an MS-13 meeting in Washington, D.C.

rr.    On or about November 6, 2010, MS-13 members drove to an MS-13 meeting at the Econolodge in Takoma Park, Maryland.

(**RICO Conspiracy**, in violation of Title 18, United States Code, Section 1962(d))

## COUNT TWO

23.    Beginning on a date unknown to the Grand Jury but since at least the late 1990s, and continuing up through and including the present, in the District of Columbia, the District of Maryland, and elsewhere, and continuing through and including on or about the date of the return of this indictment, both dates being approximate and inclusive, the MS-13, as more fully described in Paragraphs 1 through 14 of Count One, which are realleged and incorporated by reference as if fully set forth herein, constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), namely the MS-13 enterprise, that is, a group of individuals associated in fact which was engaged in, and the activities of which affected, interstate and foreign

commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

24.    The above described enterprise, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Section 1959(b)(1) and 1961(1), namely, acts involving murder, in violation of District of Columbia Code, Sections 22-2101 and 2103 and in violation of Maryland Code Criminal Law §§ 2-201, 2-204, 2-205, 2-206 and the Common Law of Maryland, acts involving robbery, in violation of District of Columbia Code, Section 22-2801, extortion, in violation of District of Columbia Code, § 22-3251, Maryland Code, Criminal Law §§ 3-402 and 3-403 and the Common Law of Maryland, acts involving extortion, in violation of District of Columbia Code, § 22-3251, and Maryland Code, Criminal Law §§ 3-701, 3-705, and the Common Law of Maryland; narcotics trafficking, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; and obstruction of justice in violation of Title 18, United States Code, Sections 1503 and 1512.

25.    On or about April 7, 2008, in the District of Columbia, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS013, an enterprise engaged in racketeering activity, the defendant, **TOKIRO RODAS-RAMIREZ**, also known as Perverso, also known as Johnny, and others known to the Grand Jury, unlawfully, knowingly, and intentionally did assault with a dangerous weapon Dimas Perez in violation of D.C. Code Section 22-402.

      **(Assault with a Dangerous Weapon in Aid of Racketeering and Aiding and Abetting**, in violation of Title 18, United States Code, Sections 1959(a)(3) and (2))

## COUNT THREE

On or about April 7, 2008, in the District of Columbia, the defendant, **TOKIRO RODAS-RAMIREZ**, also known as Perverso, also known as Johnny, and another known to the Grand Jury unlawfully, willfully, and knowingly did use and carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a court in the United States, namely Assault with a Dangerous Weapon in Aid of Racketeering as alleged in Count Two, and did possess, brandish and discharge the firearm in furtherance of the offense charged in Count Two.

> (**Possession of a Firearm During and in Relation to a Crime of Violence and Aiding and Abetting**, in violation of Title 18 United States Code, Sections 924(c)(1)(A) and (2))

## COUNT FOUR

The allegations in paragraphs 1 through 14 of Count One of this Indictment are realleged and incorporated by reference as though fully set forth herein.

On or about November 6, 2008, in the District of Columbia, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendant, **YESTER AYALA**, also known as Freeway, also known as Daddy Yankee, and other individuals whose identity is known to the Grand Jury, unlawfully and knowingly, did murder Louis Alberto Membreno-Zelaya, in violation of D.C. Code, Sections 22-2101 and 4502 .

> (**Murder in Aid of Racketeering and Aiding and Abetting**, in violation of Title 18, United States Code, Sections 1959(a)(1) and (2))

19

## COUNT FIVE

**HENRY DIAZ-ANTUNUEZ**, also known as Stewie, also known as Stuvi, **YESTER AYALA**, also known as Freeway, also known as Daddy Yankee, and other individuals whose identity is known to the Grand Jury, within the District of Columbia, while armed with a dangerous weapon, that is a knife or other sharp object, purposely and with deliberate and premeditated malice, killed Louis Alberto Membreno-Zelaya by stabbing him with a knife or other sharp object on or about November 6, 2008, thereby causing injuries from which died on or about November 6, 2008.

> **(First Degree Murder While Armed (Premeditated)**, in violation of 22 D.C. Code, Sections 2101, 4502 (2007 ed.)

## COUNT SIX

The allegations in paragraphs 1 through 14 of Count One of this Indictment are realleged and incorporated by reference as though fully set forth herein.

On or about December 12, 2008, in the District of Columbia, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendant, **YESTER AYALA**, also known as Freeway, also known as Daddy Yankee, and other individuals both known and unknown to the Grand Jury, unlawfully and knowingly, did murder Giovanni Sanchez in violation of D.C. Code, Sections 22-2101 and 4502.

> **(Murder in Aid of Racketeering**, in violation of Title 18, United States Code, Section 1959(a)(1))

## COUNT SEVEN

**YESTER AYALA**, also known as Freeway, also known as Daddy Yankee, and other individuals both known and unknown to the Grand Jury, within the District of Columbia, while armed with a dangerous weapon, that is, a knife or other sharp object, purposely and with deliberate and premeditated malice, killed Giovanni Sanchez by stabbing him with a knife or other sharp object on or about December 12, 2008, thereby causing injuries from which Giovanni Sanchez died on or about December 12, 2008.

> **(First Degree Murder While Armed (Premeditated)**, in violation of Title 22, District of Columbia Code, Sections 2101, 4502 (2007 ed.)

## COUNT EIGHT

The allegations in paragraphs 1 through 14 of Count One of this Indictment are realleged and incorporated by reference as though fully set forth herein.

On or about March 28, 2010, in the District of Maryland, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendants, **NOE MACHADO-ERAZO**, also known as Gallo and **JOSE MARTINEZ-AMAYA**, also known as Crimen, also known as Mecri, and another individual whose identity is known to the Grand Jury, unlawfully and knowingly, did murder Felipe Enriquez, in violation of Maryland Code Criminal Law §§ 2-201, 2-204, 2-205, 2-206 and the Common Law of Maryland.

> **(Murder in Aid of Racketeering**, in violation of Title 18, United States Code, Section 1959(a)(1))

## COUNT NINE

On or about March 28, 2010, in the District of ~~Columbia~~ Maryland (UM), the defendants, **NOE MACHADO-ERAZO**, also known as Gallo; and **JOSE MARTINEZ-AMAYA**, also known as Crimen, also known as Mecri, and another individual whose identity is known to the Grand Jury, unlawfully, willfully, and knowingly did use and carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, Murder in Aid of Racketeering and did discharge a firearm in furtherance of the offense charged in Count Eight of this Indictment.

(**Possession of a Firearm During and in Relation to a Crime of Violence and Aiding and Abetting**, in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2)

## NOTICE OF SPECIAL SENTENCING FACTORS

1.      On or about July 29, 2008, **TOKIRO RODAS-RAMIREZ**, also known as Perverso, also known as Johnny, feloniously, willfully and with deliberately premeditated malice aforethought killed and murdered Luis Miguel Chavez-Ponce in violation of Maryland Code Criminal Law §2-201 and the Common Law of Maryland.

2.      On or about November 6, 2008, **YESTER AYALA**, also known as Freeway, also known as Daddy Yankee, participated in the purposeful, deliberate and premeditated killing of Louis Alberto Membreno-Zelaya, in violation of District of Columbia Code, Section 22-2101.

3.      On or about November 6, 2008, **YESTER AYALA**, also known as Freeway, also known as Daddy Yankee, with the intent to kill another and to inflict serious bodily injury on another and with a conscious disregard of an extreme risk of death or serious bodily injury to another caused the death of Louis Alberto Membreno-Zelaya in violation of District of Columbia Code, Section 22-2103.

4.   On or about December 12, 2008, **YESTER AYALA**, also known as Freeway, also known as Daddy Yankee, participated in the purposeful, deliberate and premeditated killing of Giovanni Sanchez, in violation of District of Columbia Code, Section 22-2101.

5.   On or about December 12, 2008, **YESTER AYALA**, also known as Freeway, also known as Daddy Yankee, with the intent to kill another and to inflict serious bodily injury on another and with a conscious disregard of an extreme risk of death or serious bodily injury to another caused the death of Giovanni Sanchez in violation of District of Columbia Code, Section 22-2103.

6.   On or about March 31, 2010, **NOE MACHADO-ERAZO**, also known as Gallo, and **JOSE MARTINEZ-AMAYA**, also known as Crimen, aided and abetted by others, and on the authorization of **MOISES HUMBERTO RIVERA-LUNA**, also known as Santos, also known as Viejo Santos, feloniously, willfully, and of their deliberately premeditated malice aforethought did kill and murder Felipe Leonardo Enriquez, also known as Zombie, in violation of Maryland Code Criminal § 2-201 and the Common Law of Maryland.

A TRUE BILL:

FOREPERSON.

Ronald C. Machen Jr/GG.
Attorney for the United States in
and for the District of Columbia